J-E02002-22

2023 PA Super 88

| | |
|---|---|
| ELITE CARE, RX, LLC | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| PREMIER COMP SOLUTIONS, LLC; LAUNDRY OWNERS' MUTUAL LIABILITY INSURANCE ASSOCIATION; UPMC BENEFIT MANAGEMENT SERVICES, INC. D/B/A UPMC WORK PARTNERS; LACKAWANNA CASUALTY COMPANY; AND BRICK STREET MUTUAL INSURANCE COMPANY | No. 1144 WDA 2020 |
| APPEAL OF: PREMIER COMP SOLUTIONS, LLC, LAUNDRY OWNERS' MUTUAL LIABILITY INSURANCE ASSOCIATION, LACKAWANNA CASUALTY COMPANY AND BRICK STREET MUTUAL INSURANCE COMPANY | |

Appeal from the Order Entered June 5, 2020
In the Court of Common Pleas of Allegheny County Civil Division at
No(s):  GD-19-005312

BEFORE:  PANELLA, P.J., OLSON, J., DUBOW, J., KUNSELMAN, J., NICHOLS, J., MURRAY, J., McLAUGHLIN, J., McCAFFERY, J., and SULLIVAN, J.

DISSENTING OPINION BY OLSON, J.:                    **FILED: MAY 23, 2023**

I respectfully dissent from the learned Majority's determination in this matter.

The exclusivity provision of the Workers' Compensation Act ("WCA") declares:

> The liability of an employer under [the WCA] shall be exclusive and in place of any and all other liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 P.S. § 481(a).

Under this section, the WCA "is a worker's exclusive remedy against his employer for an injury sustained in the course and scope of employment." **Lewis v. Sch. Dist. Of Phila.**, 538 A.2d 862, 867 (Pa. 1988). In other words, "[t]he exclusivity provision of the [WCA] essentially 'bars tort actions flowing from any work-related injury.'" **American Road Lines v. W.C.A.B. (Royal)**, 39 A.3d 603, 610 (Pa. Cmwlth. 2012), *quoting* **Kline v. Arden H. Verner Co.**, 469 A.2d 158, 160 (Pa. 1983).

Our Supreme Court has concluded that the exclusivity provision of the WCA offers co-extensive immunity to both employers and their insurance carriers. Specifically, the Supreme Court declared, under the WCA, "[t]he employer's immunity from tort action extends to its workers' compensation insurance carrier, protecting the insurer to the full extent of the employer's protection." **Kuney v. PMA Ins. Co.**, 578 A.2d 1285, 1286 (Pa. 1990); **see also** 77 P.S. § 501(a)(1) ("[the WCA] insurer shall assume the employer's liability hereunder and shall be entitled to all of the employer's immunities and protection hereunder"). Thus, "[a]n employer's liability for work-related injuries is governed solely by the [WCA], and the same is true of a compensation insurance carrier." **Kuney**, 578 A.2d at 1286. Further, as our

Supreme Court has held, "[t]he exclusivity provisions of the [WCA] prohibit a tort action against the insurance carrier for damages caused by the insurer's allegedly intentional mishandling of the injured employee's compensation claim." *Id.* at 1288.

In the case at bar, Elite Care, Rx, LLC (hereinafter "Plaintiff"), filed suit against Appellants, all of whom are workers' compensation insurance carriers or the agents of such insurers. Plaintiff's Complaint, 4/9/19, at ¶¶ 8-9. Within its complaint, Plaintiff averred that "certain employees whose employers were insured by [Appellants] were injured during the course and scope of their work." *Id.* at ¶ 35. The employees were prescribed medications for their injuries and a pharmacy, named Patient Direct RX, filled these prescriptions. *See id.* at ¶¶ 11, 21, and 35. According to Plaintiff, "[a]fter Patient Direct RX fill[ed] the prescriptions of these patients, certain Providers then purchase[d] the claims arising from these prescriptions (*i.e.* the right to bill and collect from the carrier) from Patient Direct RX, paying fair market value for the same." *Id.* at ¶ 14. Plaintiff is "the manager and billing agent" for these Providers. *Id.* at ¶ 16.

As Plaintiff claimed, Appellants failed to pay for the prescription medications that "each insured's injured employee has received." *Id.* at ¶ 20. Further, Plaintiff claimed, Appellants "have alleged that they are not required to pay [for the prescription medications] because [Plaintiff is] . . . not a Health Care Provider as defined by the" WCA. *Id.* at ¶ 22. According to Plaintiff,

Appellants "have denied payment for 110 different injured employees resulting in $548,035.28 of unpaid medical prescriptions." *Id.* at ¶ 38.

Moreover, in an attempt to resolve the claim, Appellants demanded that Plaintiff file an application for fee review under the WCA. *Id.* at ¶ 29. Plaintiff claims, however, that after it obtained favorable administrative decisions, Appellants requested hearings before the Bureau of Workers' Compensation, and, in front of the hearing officer, Appellants "frivolously and in bad faith asserted that [the fee review] process [was] improper." *Id.* at ¶ 37.

Plaintiff's complaint contains four counts: 1) a demand for declaratory relief; 2) fraud; 3) civil conspiracy; and 4) unjust enrichment. Specifically, in Count 1, Plaintiff requested that the trial court declare that it "is a valid agent of [the] Health Care Providers and [Appellants] must pay for these medications . . . , plus 10% per annum, *per* 77 P.S. § 717.1."[1] *Id.* at Declaratory Relief "Wherefore" Clause.

---

[1] In relevant part, 77 P.S. § 717.1(a) provides:

> The employer and insurer shall promptly investigate each injury reported or known to the employer and shall proceed promptly to commence the payment of compensation due either pursuant to an agreement upon the compensation payable or a notice of compensation payable as provided in section 407 or pursuant to a notice of temporary compensation payable as set forth in subsection (d), on forms prescribed by the department and furnished by the insurer. The first installment of compensation shall be paid not later than the twenty-first day after the employer has notice or knowledge of the employe's disability. Interest shall accrue on all due and unpaid compensation at the rate of ten per centum per annum.

In Count 2, Plaintiff claimed that Appellants fraudulently asserted that Plaintiff "was not an agent of [the Health Care] Providers, and thus payment did not need to be made for the prescriptions their injured employees received." *Id.* at ¶ 45. Moreover, Plaintiff claimed that Appellants "furthered this fraud by claiming that [Plaintiff's] exclusive remedy to resolve this issue was to file [an application for fee review, but then, after Plaintiff received a favorable administrative decision, Appellants] . . . argued that the fee review process" was inappropriate. *See id.* at ¶¶ 47-49. For this alleged fraud, Plaintiff sought $548,035.28 in "unpaid medical prescriptions," plus the additional costs it expended during the fee review process. *Id.* at Fraud "Wherefore" Clause.

Plaintiff's civil conspiracy claim, at Count 3, reiterated the allegations that supported its fraud claim and, in its Wherefore Clause, Plaintiff again demanded that Appellants pay the $548,035.28 as "unpaid medical prescriptions," plus the additional costs Plaintiff expended during the fee review process. *See id.* at Civil Conspiracy "Wherefore" Clause.

Finally, in the unjust enrichment claim at Count 4, Plaintiff alleged that it provided "the necessary prescriptions to the insureds' injured employees

---

77 P.S. § 717.1(a). Under this section of the WCA, "[i]f an insurer fails to pay the entire bill within 30 days of receipt of the required bills and medical reports, interest shall accrue on the due and unpaid balance at 10% per annum." 34 Pa.Code § 127.210.

without receiving payment for the same" and that Plaintiff "conferred a financial benefit upon" Appellants in the amount of $548,035.28. *Id.* at ¶ 59.

As is evident from the above, Plaintiff's claims all seek payment for treatment that was provided under the WCA or compensation for damages caused by Appellants' alleged intentional mishandling of workers' compensation claims, both of which occurred while Appellants acted within their roles as workers' compensation insurers under the WCA. As stated above, the WCA establishes the exclusive forum for resolution of both payment disputes and alleged mismanagement of workers' compensation claims. *See*, *e.g.*, 77 P.S. § 531(1)(i) ("[t]he employer shall provide payment in accordance with this section for reasonable surgical and medical services, services rendered by physicians or other health care providers"); *Kuney*, 578 A.2d at 1288 ("[t]he exclusivity provisions of the [WCA] prohibit a tort action against the insurance carrier for damages caused by the insurer's allegedly intentional mishandling of the injured employee's compensation claim"). As such, Plaintiff is bound by the exclusive remedies of the WCA and Appellants enjoy statutory immunity from Plaintiff's current action before the court of common pleas. Therefore, I would vacate the trial court's order and hold that Plaintiff's civil action is barred by the WCA.

The learned Majority holds otherwise. As the Majority notes, one of the main issues in this case is whether Plaintiff – the agent of a putative health care provider – may receive compensation for treatment that Patient Direct RX provided under the WCA. Further, the Majority cites to the Commonwealth

Court's opinion in ***Armour Pharmacy v. Bureau of Workers'***
***Compensation Fee Review Hearing Office (Wegman's Food Markets,***
***Inc.)***, 206 A.3d 660 (Pa. Cmwlth. 2019) (*en banc*) (hereinafter "***Armour I***"),
where the Commonwealth Court held that, in a fee review proceeding under
the WCA, the Hearing Office has jurisdiction to determine whether a putative
provider serves or functions as an actual "provider" under the WCA.
Nevertheless, the Majority holds:  that ***Armour I*** was incorrectly decided;
that the scope of the fee review process is limited to the "amount or timeliness
of payment for medical treatment;" and, that the determination of whether
an entity is a "provider" is beyond the scope of a fee review.  ***See***, ***e.g.***,
Majority Opinion at **8-11.  The Majority then reasons that, because the issue
of whether Plaintiff is a "provider" is beyond the scope of the fee review
process, Appellants do not enjoy immunity from Plaintiff's claims.  ***See id.*** at
**10-12.

Respectfully, I believe the Majority is incorrect.  I express no opinion on
whether ***Armour I*** was correctly or incorrectly decided.  However, regardless
of whether ***Armour I*** was correctly decided, the issue of whether Plaintiff is a
provider entitled to relief under the WCA can always be decided, under the
WCA, by a workers' compensation judge.  Indeed, as the Commonwealth
Court explained:

> [A c]laimant can file a petition to establish [the i]nsurer's
> liability to [a putative provider], such as a review petition or
> a penalty petition.  . . . Claimants have an incentive to file a
> petition on behalf of a provider because when an insurer
> violates the [WCA] by failing to make proper payment to a

medical provider, the penalty is payable to the claimant [as a statutory incentive]. The absence of a direct statutory remedy for providers does not mean that [an appellate court] may expand the scope of a fee review to create a remedy. The matter is one for the legislature, assuming there is a need for a provider to have another remedy.

*Selective Ins. Co. of Am. V. Bureau of Workers' Comp. Fee Review Hearing Office (The Physical Therapy Institute)*, 86 A.3d 300, 305 n.9 (Pa. Cmwlth. 2014) (citations omitted), *overruled, in part, by Armour I*; *see also Armour I*, 206 A.3d at 672 ("Our holding does not limit the determination of the status of a 'provider' to a fee review proceeding. In appropriate cases, this question may also be determined by a workers' compensation judge in the course of a claim or penalty petition proceeding").[2]

Further, and more to the point, even if the determination of whether an entity is a "provider" is beyond the scope of the fee review process, this holding would not diminish Appellants' statutory immunity from Plaintiff's tort action, where Plaintiff's claims either seek payment for treatment that was provided under the WCA or compensation for damages caused by the insurer's alleged intentional mishandling of the workers' compensation claim. As

---

[2] Having a workers' compensation judge make the determination of who is a "provider" under the WCA makes eminent sense. Workers' compensation judges are uniquely qualified to make such decisions due to their expertise in the area of workers' compensation law. Under the Majority decision, the interpretating of the WCA and determinations that impact this highly specialized body of law would be made by judges on the courts of common pleas who are generally not experienced in this field. Hence, the reason for the WCA's exclusivity provisions.

explained above, the WCA provides the exclusive forum for resolving both types of disputes and, thus, Plaintiff's current action is barred by the WCA. Therefore, I respectfully dissent.